JOURNAL ENTRY AND OPINION
{¶ 1} John E. Duda ("Duda") appeals from the decision of the trial court granting sanctions against him in favor of defendants Michael Banks M.D. ("Dr. Banks"), University Orthopedics Associates, Inc. ("UOA") and Southwest General Health Center ("SWGH"). Duda argues the trial court erred in granting sanctions against him as his conduct did not violate R.C. 2323.51 or Civ. R. 11. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} On December 31, 2000, Marie Syverson injured her left foot and ankle after sustaining a fall while roller skating. Paramedics brought her to the Emergency Room at SWGH. Marie Syverson was accompanied by her then fiance, David Sigmon, at the emergency room. Marie Syverson and David Sigmon were not married as of December 31, 2000 and did not marry until August 19, 2001. For clarification purposes, this court will refer to the plaintiff as Marie Sigmon, even though we acknowledge that Marie and David Sigmon were not married until August 19, 2001. N.B. This entry is an announcement of the court's decision. See App. R. 22(B), 22(D) and 26(A); Loc. App. R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App. R. 22(E) unless a motion for reconsideration with supporting brief, per App. R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App. R. 22(E). See, also, S.Ct. Prac. R. II, Section 2(A)(1). *Page 3 
 {¶ 3} Dr. Walter Masnyj ("Dr. Masnyj") assessed Marie Sigmon in the emergency room. Dr. Masnyj ordered x-rays of her left hand and foot, which revealed that Marie Sigmon had suffered a trimalleolar fracture of the left foot. Marie Sigmon was reevaluated in the hospital on December 31, 2000, and discharged on the morning of January 1, 2001.
 {¶ 4} During her deposition testimony, Marie Sigmon testified as to a conversation she had with Dr. Mohammed Khan ("Dr. Khan") in the early morning hours of January 1, 2001. According to Marie Sigmon, after she requested pain medication, Dr. Khan entered her room at approximately 5:00 a.m., told her she should not need pain medication, he had seen her x-rays, and he wanted Marie Sigmon to admit she had a drug problem. Mrs. Sigmon also testified that she asked Dr. Khan about her insurance because she did not believe she was "totally registered." Pursuant Mrs. Sigmon, Dr. Khan told her she could not stay at SWGH since she did not have insurance. Mrs. Sigmon testified that Dr. Khan told her he would put on a temporary cast, which she was to cut off and then go to Medina General Hospital the next day.
 {¶ 5} Dr. Khan testified by way of affidavit that he never personally met or had any discussions with Mrs. Sigmon at any time. The SWGH records for Marie Sigmon's admissions contain no record of Dr. Khan rendering any medical treatment to Mrs. Sigmon. *Page 4 
 {¶ 6} On January 2, 2001, Marie Sigmon checked into Medina General Hospital's emergency room. After observing the fracture of her left foot, doctors referred Mrs. Sigmon to the Crystal Clinic, where she was treated on January 3, 2001. The doctor at the Clinic told her she needed surgery, but the surgery was delayed several times because her left foot was too swollen. On January 19, 2001, Marie Sigmon had her fracture surgically repaired.
 {¶ 7} On December 27, 2001, Plaintiffs Marie Sigmon and David Sigmon, by and through their attorney, John Porter, filed their original complaint for compensatory damages against defendants SWGH, Dr. Khan, Dr. Masnyj, Emergency Professional Services, Inc. ("EPS"), Dr. Banks, UOA, and several John Doe defendants. The complaint alleged in pertinent part:
 "Upon information and belief, on or about [December 31, 2000 and January 1, 2001], each Defendant at Southwest negligently treated Plaintiff, or each Defendant employed or controlled a physician who negligently treated Plaintiff. Each Defendant's medical treatment was below the standard in the community.
 On said dates, each Defendant failed to properly treat Plaintiff because she did not, or Defendants thought she did not, have insurance.
 Defendants wrongfully accused or referred to Plaintiff as being addicted to drugs.
 Defendants [sic] failure to treat Plaintiff because of alleged lack of insurance constituted outrageous conduct and/or wrongfully accusing or referring to Plaintiff as being addicted to drugs, constituted outrageous conduct upon Plaintiff." *Page 5 
 {¶ 8} The complaint also contained a claim for loss of consortium for plaintiff David Sigmon, even though he and Marie Sigmon were not legally married until nearly eight months after the Defendants' alleged negligence.
 {¶ 9} On July 2, 2002, Duda entered an appearance on behalf of the Sigmons, wherein he filed a motion for enlargement of time within which to file an expert report. The trial court granted Duda's motion and ordered the plaintiffs to produce their expert reports by October 2, 2002. The plaintiffs did not comply with this order and each of the named defendants filed a motion for summary judgment. On October 15, 2002, the plaintiffs voluntarily dismissed their complaint without prejudice.
 {¶ 10} On October 14, 2003, one day prior to the expiration of the savings statute, R.C. 2305.19, the plaintiffs refiled their complaint by and through their attorney, Duda. The second complaint contained the same causes of action against the same defendants, but with the addition of a claim for punitive damages. The plaintiffs did not have an expert report at the time of the second filing. The trial court gave plaintiffs until June 25, 2004, to produce their expert reports. The plaintiffs failed to provide this report, and each of the defendants moved for summary judgment. Plaintiffs failed to oppose any of the defendants' dispositive motions. The trial court granted each dispositive motion as unopposed, and dismissed the entire matter, with prejudice, on November 5, 2004. *Page 6 
 {¶ 11} On October 26, 2004, Dr. Banks and UOA, filed a motion for sanctions and costs, and SWGH filed a motion for sanctions on November 19, 2004. The trial court conducted an oral hearing on the motions on July 8, 2005; the trial court heard testimony and received exhibits from both sides. Plaintiff Marie Sigmon was unable to attend and, therefore, her videotaped deposition was subsequently filed with the trial court on August 18, 2005. After hearing the evidence submitted at the hearing, the trial court made the following findings of fact:
 (1)The Court finds that Plaintiff Marie Sigmon did not at any time tell attorney Duda that Defendant Dr. Banks accused her of being a drug addict nor did Marie Sigmon tell attorney Duda that Dr. Banks told her she had to leave SWGH due to her not having insurance. Rather, prior to attorney Duda re-filing this case, Plaintiff Marie Sigmon told Attorney Duda that Defendant Dr. Khan accused her of being addicted to drugs and told her that she could not stay at SWGH because she did not have any insurance.
 (2)Plaintiffs Marie Sigmon and David Sigmon were not married at the time the events giving rise to this dispute occurred. Despite having been involved in this matter for over one-year prior to re-filing the case on October 12 (sic), 2003, attorney Duda included a loss of consortium claim in the re-filed Complaint.
 (3) Based upon the discovery exchanged between Plaintiffs and Defendant SWGH, Plaintiffs were put on notice prior to re-filing the Complaint that Dr. Khan was not an employee of SWGH.
 (4) Attorney Duda sent his first correspondence to Dr. Bruce Kay on September 4, 2002, in an attempt to have Dr. Kay provide an expert report in relation to this matter (this correspondence was sent before the first filing was voluntarily dismissed on October 15, 2002). Attorney Duda did not hear back from Dr. Kay prior to filing the second Complaint on October 14, 2003. Thus, Attorney Duda failed to obtain an expert during the pendency of the first matter and prior to filing the *Page 7 
second Complaint. Attorney Duda's explanation for not having any communication with Dr. Kay prior to re-filing is that Dr. Kay had moved his office from Gahanna, Ohio to Brooklyn, New York.
 (5) Attorney Duda sent Dr. Kay a follow-up correspondence on December 10, 2003 at his home in Cedarhurst, New York (this was approximately two months after filing the Second Complaint). Subsequent to this letter, attorney Duda testified that he heard back from a "stenographer's secretary that worked for [Dr. Kay] in Columbus, Ohio saying that Dr. Kay thought there was a case." Attorney Duda never heard firsthand from Dr. Kay that he thought there was a case.
 (6)Plaintiff Marie Sigmon had her deposition taken on February 23, 2004. Attorney Duda had yet to obtain an expert report by this date.
 (7) Attorney Duda received a report from Dr. Kay on February 29, 2004 (over four months after filing second Complaint). In essence, Dr. Kay's report stated that the conduct of all of the named Defendants did not fall below the standard of care as to amount to malpractice. Accordingly, Dr. Kay opined that Plaintiffs' claims were not meritorious.
 (8) Attorney Duda sent Plaintiffs Marie and David Sigmon a letter on April 15, 2004, explaining that he received Dr. Kay's report and that Dr. Kay opined that there was no sub-standard care in Plaintiffs' case. Attorney Duda also stated in the letter that he is "unable to provide a favorable report. Please contact another lawyer immediately to see if he will take over your case. Otherwise your case will be dismissed.
 (9) Attorney Duda sent Plaintiffs another letter on June 25, 2004 (the date Plaintiffs were ordered by the Court to produce expert reports), wherein Duda told Plaintiffs that, by his not receiving a response to his first letter, he assumed that Plaintiffs were unable to obtain another attorney. Attorney Duda further told Plaintiffs that the court would dismiss their case "with prejudice to never be brought again" unless Plaintiffs obtain counsel with the court's permission and produce a favorable expert report.
 (10) Plaintiff Marie Sigmon responded to attorney Duda's second letter on July 1, 2004. Mrs. Sigmon informed Duda that she was very *Page 8 
displeased with his services. She also told him that she sought the advice of another doctor, who, according to Mrs. Sigmon, informed her that she "was being lied to if any lawyer was entertaining [her] case." Mrs. Sigmon further told attorney Duda that their attorney-client relationship was through, and that she did not wish to pursue the matter with another attorney. Thus, attorney Duda was put on notice in early July that Plaintiffs did not wish to proceed with this case.
 (11) Attorney Duda responded with a letter on July 6, 2004, again advising Mrs. Sigmon that since she does not have a lawyer to take over her case, "it will be dismissed as without merit by the court."
 (12) As the letters indicate, Plaintiffs did not file an expert report by the June 25, 2005 deadline imposed by the Court.
 (13) Largely because no expert report(s) was filed by Plaintiffs, each of the named Defendants filed motions for summary judgment: Defendant Mohammed Khan, M.D. on June 30, 2005; Defendants Michael Banks, M.D. and University Orthopedics Associates, Inc. on July 2, 2004; Defendants Walter Masnyj, M.D. and Emergency Professional Services, Inc. on July 2, 2004; and Defendant SWGH on July 7, 2004. All of the Defendants, including moving Defendants Michael Banks, M.D. and University Orthopedics Associates, Inc. and SWGH here, incurred expenses by preparing and filing their respective motions for summary judgment.
 (14) Plaintiffs never filed a brief in opposition nor responded in any manner to any of the Defendants motions for summary judgment.
 (15) The Court granted all of the Defendants' motions for summary judgment as unopposed: Defendants Mohammed Khan, M.D., Michael Banks, M.D. and University Orthopedics Associates, Inc., and SWGH on September 21, 2004, and Defendants Walter Masnyj, M.D. and Emergency Professional Services, Inc on November 5, 2004. This case was officially dismissed in its entirety, with prejudice, on November 5, 2004.
 (16) Defendants Michael Banks, M.D. and University Orthopedics Associates Inc. and SWGH incurred further expenses in preparing and filing their respective motions for sanctions at issue here and in *Page 9 
preparing for and participating in the oral hearing held upon the motions for sanctions."
 {¶ 12} After applying the law to the above findings of fact, the trial court found that Attorney Duda "engaged in sanctionable conduct for (1) bringing a loss of consortium claim, (2) including all of the Defendants in the allegation that Marie Sigmon was called a drug addict and told to leave the hospital because she did not have insurance, (3) failing to dismiss this case after learning that this case totally lacked merit and that his clients did not want to proceed, and (4) alleging punitive damages in the refiled Complaint without any basis."
 {¶ 13} The trial court then exercised its discretion and awarded Dr. Banks and UOA $4,500 and awarded SWGH $4,000 as sanctions for Attorney Duda's conduct. Duda appeals, raising the eight assignments of error contained in the appendix to this opinion. In his eight assignments of error, Duda challenges the trial court's imposition of sanctions pursuant to R.C. 2323.51 and Civ. R. 11.
 {¶ 14} Ohio law provides two separate mechanisms for an award of sanctions for frivolous litigation: R.C. 2323.51 and Civ. R. 11. Pursuant to R.C. 2323.51(B)(1), a court may award reasonable attorney fees to any party in a civil action adversely affected by frivolous conduct. Under the statute, the court must engage in a three-part inquiry. First, the court must determine whether the claim was frivolous; and, second, the court must determine whether the aggrieved party was adversely affected. R.C. 2323.51. If these determinations are made, the court then must *Page 10 
finally determine what amount of reasonable attorney fees, costs, and expenses should be awarded to the aggrieved party. Lable Co. v.Flowers (1995), 104 Ohio App.3d 227; Ceol v. Zion Industries, Inc.
(1992), 81 Ohio App.3d 286.
 {¶ 15} Pursuant to R.C. 2323.51(A)(1)(a), conduct is defined as follows:
 "The filing of a civil action, the assertion of a claim, defense or other position in connection with a civil action, or the taking of any other action in connection with a civil action."
 {¶ 16} R.C. 2323.51 defines two types of frivolous conduct, (1) conduct that serves only to harass or maliciously injure the opposing party in a civil action; and (2) conduct that is unwarranted under existing law and for which there is no "good faith argument for an extension, modification, or reversal of existing law." R.C. 2323.51(A)(2)(a)(i) and (ii).
 {¶ 17} Similarly, under Civ. R. 11, a court may award a party attorney fees and expenses if an opposing attorney filed a pleading or motion in violation of the rule:
 "The signature of an attorney or pro se party constitutes a certificate by the attorney or party that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a document is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the document had not been served. For a willful violation of this rule, an attorney or pro se party, upon motion of a party or upon the court's own motion, may be subjected to appropriate action, including an award to the opposing party of expenses and reasonable attorney fees incurred in bringing any motion under this rule." *Page 11 
 {¶ 18} In ruling on a motion for sanctions made pursuant to Civ. R. 11, a court "must consider whether the attorney signing the document (1) has read the pleading, (2) harbors good grounds to support it to the best of his or her knowledge, information, and belief and (3) did not file it for purposes of delay." Ceol, supra. If the court determines that any of these requirements have not been met, it must then determine whether the violation was willful as opposed to merely negligent. Haubeil SonsAsphalt Materials, Inc. v. Brewer Brewer Sons, Inc. (1989),57 Ohio App.3d 22. If the court determines that the violation was willful, it may impose appropriate sanctions. Taylor v. Franklin Boulevard NursingHome, Inc. (1996), 112 Ohio App.3d 27.
 {¶ 19} On appeal, no single standard of review applies to these cases. The inquiry must necessarily be one of mixed questions of fact and law.Crooks v. Consolidated Stores Corp. et al., Franklin App. No. 98AP-83.
 "With respect to purely legal issues, we are persuaded by the * * * line of cases which provide for a de novo standard of review. When an inquiry is purely a question of law, clearly an appellate court need not defer to the judgment of the trial court. However, we do some degree of deference appropriate in reviewing a trial court's factual determinations; accordingly, we will not disturb a trial court's findings of fact where the record contains competent, credible evidence to support such findings. This standard of review of factual determinations is akin to that employed in a review of the manifest weight of the evidence in civil cases generally * * *." (Citation omitted.)
 "Finally, where a trial court has found the existence of frivolous conduct, the decision to assess or not to assess a penalty lies within the sound discretion of the trial court. The language of *Page 12 
R.C. 2323.51(B)(1) unequivocally vests the trail court with such discretion." (Citations omitted.)
Crooks, supra.
 {¶ 20} In his first assignment of error, Duda claims R.C. 2323.51
violates Article IV of the Ohio Constitution. In particular, Duda argues R.C. 2323.51 is unconstitutional because only the Supreme Court can impose rules of conduct on attorneys and provide for sanctions for attorney misconduct in accordance with Article IV, Section 5(B) and Section 2(B)(1)(g). This assignment of error lacks merit.
 {¶ 21} "An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." Loyd v.Lovelady (2006), 108 Ohio St.3d 86, 88, 2006-Ohio-161. Attorney Duda has not met this burden of proof.
 {¶ 22} While Article IV of the Ohio Constitution confers general rule-making power to the Supreme Court, "the empowering words of the Constitution are not words singularly granting the rule-making power to the Supreme Court. There is no specific language excluding the legislatures from this field. We feel that this court should not supply such exclusionary language to the Constitution." Gates v. Brewer (1981),2 Ohio App.3d 347. In addition, Article IV, Section 5 of the Ohio Constitution prohibits only "laws in conflict" with rules of practice procedure, and *Page 13 
states, "[a]ll laws in conflict with such rules shall be of no further force or effect after such rules have taken effect."
 {¶ 23} In this case, R.C. 2323.51 is not in conflict with Civ. R. 11. Civ. R. 11 requires an attorney to have "good ground to support" the claims set forth in the complaint. R.C. 2323.51 prohibits an attorney from filing and prosecuting claims that are (1) not warranted under existing law or (2) that cannot be supported by a good faith argument for an extension, modification, or reversal of existing law. A plain reading of R.C. 2323.51 and Civ. R. 11 reveals that although different language is used, both the statute and the rule impose the same requirement on an attorney: to prosecute only claims having merit under existing law. Thus, R.C. 2323.51 and Civ. R. 11 do not conflict and therefore, R.C. 2323.51 does not violate Article IV of the Ohio Constitution.
 {¶ 24} Duda's first assignment of error lacks merit.
 {¶ 25} In his second and third assignments of error, Duda claims the trial court erred in granting defendants' motion for sanctions based on violations of R.C. 2323.51 and Civ. R. 11. These assignments of error lack merit.
 {¶ 26} The trial court found Duda engaged in sanctionable conduct for "(1) bringing a loss of consortium claim, (2) including all of the Defendants in the allegation that Marie Sigmon was called a drug addict and told to leave the hospital because she did not have insurance, (3) failing to dismiss this case after learning *Page 14 
that this case totally lacked merit and that his clients did not want to proceed, and (4) alleging punitive damages in the refiled Complaint without any basis." We shall address each instance of conduct separately.
Bringing a loss of consortium claim:
 {¶ 27} The evidence in the record demonstrates Duda engaged in sanctionable conduct when he filed a loss of consortium claim. Duda became involved in this case over a year prior to the second filing on October 14, 2003, wherein he had contact with both Marie and David Sigmon. During this period of time, Duda certainly should have become aware that Marie and David were not married at the time of the incident giving rise to this action. Therefore, Duda's inclusion of the loss of consortium claim in the second complaint amounted to frivolous conduct under R.C. 2323.51(A)(2)(a)(ii), as it was not warranted under existing law, and Civ. R. 11, because Duda did not put forth evidence to show he had a good faith belief that there were grounds to support this claim.
 {¶ 28} Accordingly, the trial court correctly found that Duda committed sanctionable conduct when he included the loss of consortium claim in his refiled complaint.
 Including all of the Defendants in the allegation that Marie Sigmon was a drug addict and told to leave the hospital because she did not have insurance: *Page 15 
 {¶ 29} As noted by both the trial court in it's findings of fact, and Duda's own testimony, Marie Sigmon consistently told Duda that it was Dr. Khan who allegedly made the accusations, not Dr. Banks. Marie Sigmon never told Duda that Dr. Banks, nor any of the other named defendants, made these comments to her. Instead, Duda testified at the sanctions hearing that Marie Sigmon "insisted" Dr. Khan made the accusations.
 {¶ 30} Despite this information, Duda willfully included all of the defendants in this allegation. After doing so, Duda failed to present any evidence to show that to the best of his knowledge, information, and belief, there was good ground to support this claim against all the named defendants. As such, that claim was not warranted under existing law. Moreover, putting forth this claim based on the evidence enunciated above, amounts to frivolous conduct under R.C. 2323.51(A)(2)(a)(ii) and Civ. R. 11.
 {¶ 31} Therefore, the trial court did not err when it determined Duda committed sanctionable conduct when he included all of the named defendants in this claim.
 Failing to dismiss this case after learning that the case lacked merit and his clients did not want to proceed:
 {¶ 32} Duda committed sanctionable conduct by maintaining this matter on the court's active docket long after he knew the case lacked merit. Duda learned from his expert in April 2004, that Mrs. Sigmon's case lacked merit. Duda relayed this information to Marie Sigmon and also informed her, that he would not represent her *Page 16 
anymore. Marie Sigmon responded in a letter dated July 1, 2004, stating that she no longer wanted his services and she did not want to pursue this matter with another attorney. Accordingly, as of this point, Duda knew the case lacked merit, he had no intention to continue representing the Sigmons, Marie Sigmon did not want Duda to represent her anymore, and she had no intention of hiring another attorney. Furthermore, in her videotaped deposition, Marie Sigmon testified that she believed her case was going to be dismissed.
 {¶ 33} Despite all of this information, Duda did nothing and allowed the case to remain on the court's active docket. Because of this, defendants prepared and filed dispositive motions. In all probability, defendants had not prepared their dispositive motions until after they learned plaintiffs had not supplied an expert report. Therefore, if Duda had dismissed this matter when he realized the case lacked merit, he would have spared the defendants the time and expenses of preparing dispositive motions. Duda chose not to do this and consequently, the trial court granted each defendant's motion for summary judgment and dismissed the matter with prejudice on November 5, 2004. We find that Duda's failure to dismiss the negligence claims constituted frivolous conduct under R.C. 2323.51(A)(2)(a)(ii).
 {¶ 34} We note that an attorney's failure to have a medical expert examine a plaintiff's medical records prior to filing a medical malpractice claim does not automatically subject him or her to sanctions under either R.C. 2323.51 or Civ. R. 11. *Page 17 Driskill v. Babai, (March 26, 1997), Summit App. No. 17914. However, we agree with the trial court that the basis for sanctions is the combination of not having a medical report despite having been involved in the case for over a year prior to refiling the complaint, and, leaving the case on the active docket when he knew neither he nor his client would prosecute the matter further. Accordingly, we find that Duda violated R.C. 2323.51(A)(2)(a)(ii) by maintaining this action.[1]
 Alleging punitive damages in the refiled complaint
 {¶ 35} Duda added a punitive damages claim to his refiled complaint even though it is clear from the record that there was no basis in law for such a claim. Duda did not learn of any new evidence or discovery between the first and second refiling that would warrant that addition of a punitive damages claim. Additionally, Duda failed to present any evidence to show that to the best of his knowledge, information, and belief, there was good ground to support this claim. Thus, the claim for punitive damages was not warranted under law. We find that Duda engaged in frivolous conduct pursuant to R.C. 2323.51(A)(2)(a)(ii) and Civ. R. 11.
 {¶ 36} Based on the above, we overrule Duda's second and third assignments of error. *Page 18 
 {¶ 37} In his fourth and fifth assignments of error, Duda argues the fees awarded to defendants Dr. Banks, UOA, and SWGH were unreasonable and unnecessary. These assignments of error lack merit.
 {¶ 38} When awarding sanctions against Duda, the trial court relied upon relevant case law, DR2-106 of the Code of Professional Responsibility and Disciplinary Rule 2-106(B). The court then analyzed the amount of fees prayed for by Dr. Banks and UOA, $22,126.84, and SWGH, $10,293.41. The court determined that the requests were excessive and unreasonable. The court reasoned that the expenses incurred prior to July 2004 were not recoverable because it was not known until this time whether plaintiffs were going to proceed with the case. Therefore, the trial court concluded that the majority of attorney fees and expenses relevant were those incurred in preparation of the dispositive motions and in moving for sanctions.
 {¶ 39} The court stated that it reviewed the relevant factors enumerated in DR2-106(B) as well as the evidence presented during the hearing. After doing so, the trial court exercised its discretion and awarded Dr. Banks and UOA $4,500 and SWGH $4,000 in sanctions against Duda.
 {¶ 40} This court has reviewed the record and the evidence presented therein and determines that there existed competent, credible evidence to support the trial court's exercise of discretion. Accordingly, we find the trial court did not abuse its discretion when it awarded sanctions against Duda. Crooks, supra. *Page 19 
 {¶ 41} Duda's fourth and fifth assignments of error are overruled.
 {¶ 42} In his sixth assignment of error, Duda claims the trial court relied upon a version of R.C. 2323.51 that did not exist at the time of Duda's conduct when it granted the motions for sanctions. Therefore, Duda argues, the court violated the ex post fact clause of the Constitution. This argument is without merit.
 {¶ 43} Without addressing whether the trial court applied the incorrect version of R.C. 2323.51, we overrule this argument. As stated above, when reviewing the grant of a motion for sanctions, this court reviews questions of law de novo. Therefore, in our analysis above, we have applied the correct version of the statute, which does not contain R.C. 2323.51(A)(2)(a)(iii) and (iv). Even without subsections (a)(iii) and (a)(iv), we found that Duda committed frivolous conduct in violation of R.C. 2323.51(A)(2)(a)(ii).
 {¶ 44} Duda's sixth assignment of error is overruled.
 {¶ 45} In his seventh assignment of error, Duda claims defendants Dr. Banks, UOA, and SWGH filed their motions for sanctions outside of the applicable time period. This assignment of error lacks merit.
 {¶ 46} Pursuant to R.C. 2323.51(B)(1), an aggrieved party has the option of filing a sanctions motion at any time prior to the commencement of trial or within twenty-one days of judgment. The Ohio Supreme Court has held that the word *Page 20 
"judgment" used in the statute refers to final judgment. Soler v. Evans,St. Clair Kelsey, 94 Ohio St.3d 432, 2002-Ohio-1246.
 {¶ 47} It is clear from the record that the trial court granted the remaining motion for summary judgment of defendants Dr. Masnyj and EPS on November 5, 2004. Also on that date, the trial court marked the matter as dismissed with prejudice. We find the trial court entered final judgment on the within matter on November 5, 2004. As such, Dr. Banks, UOA, and SWGH had to file their motions within twenty-one days of November 5, 2004. R.C. 2323.51(B)(1).
 {¶ 48} Dr. Banks and UOA filed their motion for sanctions on October 26, 2004, and SWGH filed its motion for sanctions on November 19, 2004. Thus, both parties filed their motions for sanctions within the twenty-one day period required by R.C. 2323.51(B)(1).
 {¶ 49} Duda's seventh assignment of error is overruled.
 {¶ 50} In his eighth and final assignment of error, Duda argues the trial court erred in awarding sanctions based on non-sanctionable conduct. In putting forth this argument, Duda fails to cite to any authority for this claim. An appellate court may disregard an assignment of error pursuant to App. R. 12(A)(2) if an appellant fails to cite to any legal authority in support of an argument as required by App. R. 16(A)(7). State v. Martin (July 12, 1999), Warren App. No. CA99-01-003;Meerhoff v. Huntington Mortgage Co.(1995), 103 Ohio App.3d 164. "If an argument exists that *Page 21 
can support this assignment of error, it is not this court's duty to root it out." Cardone v. Cardone (May 6, 1998), Summit App. Nos. 18349 and 18673.
 {¶ 51} Duda failed to cite to any legal authority in support of his argument, a failure that allows this court to disregard this assigned error. App. R. 12(A)(2); App. R. 16(A)(7). Accordingly, Duda's eighth and final assignment of error is overruled.
The judgment of the trial court is overruled.
It is ordered that appellees recover from appellants costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANTHONY O. CALABRESE, JR., J., and ANN DYKE, J., CONCUR
 APPENDIX A
Assignments of Error: "I. The trial court erred in granting a motion for sanctions against appellant-attorney at law based on an unconstitutional statute; to *Page 22 wit, R.C. 2323.51, by reason that the statute and order thereunder violate the separation of powers provision of Article IV section 5(B) and Article IV, section 2(B)(1)(g) of the Ohio Constitution.
 II. The trial court erred in granting a motion for sanctions based on R.C. 2323.51, without evidence to support a finding that appellant acted (1) merely to harass or maliciously injure another party to a civil action, or (2) that the cause of action is not warranted by existing law and cannot be supported by a good faith argument for an extension, modification or reversal of existing law to the harm of appellees.
 III. The trial court erred in granting a motion for sanctions based on Civil Rule 11 without evidence that appellant-plaintiff's counsel acted willfully to violate Civil Rule 11.
 IV. The trial court erred in granting a motion for sanctions and assessing a penalty in the absence of proof of the necessity and reasonableness of the fees prayed for.
 V. The trial court erred in granting a motion for sanctions without necessary evidence required by R.C. 2323.51 and Civil Rule 11.
 VI. The trial court erred when it granted a motion for sanctions under Revised Code 2323.51(A)(2)(D)(iii) when that sub section of the statute did not exist at the time of the conduct at issue. Said application of this amercement statute is Ex Post Facto and unconstitutional.
 VII. The trial court erred in awarding sanctions against appellant-attorney Duda more than 21 days after final judgment for movants contrary to section 2323.51 revised, code or on motions filed more than 21 days after judgment for movants.
 VIII. The trial court erred in awarding sanctions against appellant-attorney based on conduct not sanctionable under law."
[1] Duda did not violate Civ. R. 11 because it is clear that the rule applies only after the filing of a pleading or motion. We cannot say that the refiling of the complaint alone is sanctionable. *Page 1