[Cite as *In re Estate of O'Toole*, 2019-Ohio-4165.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE THE ESTATE OF MARCELLA :
E. O'TOOLE                                                No. 108122

                                                      :

[Appeal by Thomas O'Toole]

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 10, 2019

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Probate Division
Case No. 2016EST217003

---

*Appearances:*

Thomas O'Toole, *pro se.*

Polito Rodstrom Burke, L.L.P., and Joseph T. Burke, *for appellee* Colleen O. Neiden, Administrator of the Estate of Marcella O'Toole.

MARY J. BOYLE, J.:

{¶ 1} Appellant, Thomas O'Toole, appeals the judgment of the Cuyahoga County Court of Common Pleas, Probate Division, granting the motion for sanctions against him for frivolous conduct filed by appellee, Colleen Neiden ("administratrix"

of the estate of Marcella E. O'Toole "decedent").  Appellant raises one assignment of error for our review:

> The trial court erred in granting to "counsel for the administratrix" judgment in the "amount of $23,056.43" against the appellant pursuant to "R.C. 2321.51 and Ohio Civ.R. 11."

{¶ 2}   Finding no merit to his arguments, we affirm.

## I. Procedural History and Factual Background

{¶ 3}   Marcella O'Toole passed away on May 7, 2016, without a will.  She was survived by her five children, including appellant, Neiden, Mary Patricia O'Toole ("Mary Pat"), Michael O'Toole ("Michael"), and Rosemary O'Toole-Hamman ("Hamman").  Neiden filed an authority to administer the estate on June 16, 2016, with the remaining siblings waiving their right to do so.  The probate court approved the application, and Neiden posted a fiduciary bond in the amount of $150,000.

{¶ 4}   Neiden originally indicated on an "Appointment of Appraiser" form that no appraiser was necessary.  But it soon became apparent that one would be necessary due to the siblings not being able to agree on the estate's assets, and thus, Neiden moved for the appointment of an appraiser (she later filed a second appointment of appraiser due to the fact that the original appraiser declined appointment).  Neiden also retained counsel to represent the estate due to sibling contention.

{¶ 5}   Neiden filed the first inventory and appraisal on September 7, 2016.  She listed the contents as (1) a civil war sword valued at $424, (2) "series EE savings

bonds" valued at $72,416, (3) a Key Bank checking account valued at $1,016, and (4) a 2000 Chevrolet Blazer valued at $3,265. The total value of the estate equaled $77,121.

{¶ 6} Appellant and Hamman each filed exceptions to Neiden's inventory, contending that Neiden was hiding assets from them, lying to them about where the assets were located, "obfuscating and concealing any evidence of misappropriations," and not following the rules of probate. Appellant further raised the issue that decedent, with the help of Mary Pat and Michael, had committed "structured money laundering" for years by moving decedent's money out of her bank account. Neiden responded to appellant's and Hamman's exceptions.

{¶ 7} On November 17, 2016, Hamman moved to remove Neiden as the administratrix of the estate (although she never served the estate). On November 30, appellant moved for an examination of administratrix.

{¶ 8} On December 28, 2016, Neiden filed an amended supplemental inventory and appraisal. In it, she included $258,420 in cash that had been found in decedent's home after she passed away, indicating that each sibling had received an equal share of the cash. Neiden also included $72,416 in U.S. savings bonds, $1,016 in the checking account, $6,130 of household goods based upon the appraiser's report, and $450 of jewelry. Neiden noted, however, that the inventory was incomplete because appellant and Hamman refused to return items for appraisal that they had taken out of decedent's home after she died. Appellant filed supplemental exceptions to inventory and never properly served the estate.

{¶ 9} The court held evidentiary hearings on appellant's and Hamman's motions to remove and examine the administratrix and their exceptions to inventory on December 14, 2016, December 29, 2016, February 2, 2017, May 10, 2017, and June 12, 2017. The estate's original counsel withdrew during the course of these proceedings. New counsel for the estate entered an appearance in the case on February 24, 2017.

{¶ 10} The magistrate issued his decision in December 2017. The magistrate noted that appellant stated the amount of money found in decedent's home was $270,000, not $258,420. But the magistrate found that every other sibling agreed that it was $258,420. The magistrate also found that every sibling acknowledged receiving his or her equal share except appellant, who stated that he never received any monies. The magistrate explained, however, that Michael and Mary Pat witnessed appellant receiving his portion.

{¶ 11} The magistrate further found that, throughout most of the hearings, appellant and Hamman focused many of their arguments on an examination of personal property and jewelry issues, claiming that others had removed items from the home after their mother's death. The magistrate concluded, however, that both appellant and Hamman based their respective cases mostly on hearsay statements that they claimed their mother made before she died.

{¶ 12} The magistrate also found that appellant's allegations of money laundering, fraudulent transfers, and concealment should have been raised in a separate civil action, not in an exceptions-to-inventory motion and hearing. Despite

this, the magistrate noted that "no one ha[d] provided any credible evidence during these hearings to substantiate any of the[se] claims."

{¶ 13} The magistrate further found that the "collective weight of testimony of the beneficiaries confirmed that [decedent] clearly exerted total control over the withdrawal and movement of her funds between many different accounts during her lifetime." The magistrate stated that decedent did not trust financial institutions so she intentionally held cash outside of them. The magistrate explained:

> [Decedent] instructed her children when to redeem U.S. Savings Bonds. She established accounts with survivorship rights with various children. These accounts have been transferred to the designated beneficiary outside of this estate and are not part of this administration. No further consideration can be given to these arguments within the limited scope of the exceptions and motion to remove.

{¶ 14} The magistrate concluded that appellant and Hamman failed to meet their evidentiary burden on their motions and recommended that all exceptions to inventory and motions to examine or remove the administratrix should be denied. The magistrate found that Neiden had not neglected her fiduciary duties nor failed to properly administer the estate and that she had performed her duties as required under R.C. Chapter 2109. The magistrate pointed out that Neiden's only questionable action was omitting the monies found in the decedent's house after she died, but noted that the counting and distribution of these monies "was done with full consent and approval of the other heirs at that time" (with the exception of Hamman who was present but declined to take her share when the others did but

she did at a later time). Plus, the magistrate explained that Neiden filed a supplemental inventory that included these monies.

{¶ 15} Both appellant and Hamman filed objections to the magistrate's decision, raising weight-of-the-evidence arguments without filing the transcript with the trial court.

{¶ 16} In March 2018, the trial court struck the objections due to appellant's and Hamman's failure to timely file a transcript of the proceedings. The trial court did correct one factual finding made by the magistrate. The magistrate had found that the cash was distributed on May 15, 2015, one year before the decedent's death. But actually, the siblings distributed the money after decedent's death, on May 15, 2016. The trial court otherwise approved and adopted the magistrate's decision as the order of the court.

{¶ 17} After the inventory was approved, Neiden proceeded to administer the estate, with appellant objecting to everything Neiden filed with the court.

{¶ 18} In August 2018, Neiden moved for sanctions against appellant based on his frivolous conduct throughout the proceedings. Neiden argued that appellant did not have a good-faith basis for any of his court filings, "but in particular the exceptions to inventory, first partial account, first amended partial account and attorney fees." Neiden contended that appellant "continue[d] to spew the same unfounded and fabricated statements with no legal or factual basis." In fact, Neiden maintained that appellant continued to challenge the inventory of the estate even after the inventory was approved by the court. Neiden further argued that appellant

served 12 subpoenas without serving them on the estate and obtained privileged documents from financial institutions to which he was not entitled (including personal banking records of one of his siblings). Counsel for the estate informed the court in the motion that after 28 years of practice, he had never moved for sanctions against an opposing attorney for frivolous conduct.

{¶ 19} After a hearing held in November 2018, the trial court granted Neiden's motion for sanctions. The court found that appellant had engaged in at least four courses of frivolous conduct, including (1) his persistent allegations of money laundering, (2) his insistence that joint and several bank accounts that decedent held with other heirs should be included in the estate, (3) his repeated failure to abide by the Ohio Civil Rules of Procedure with respect to subpoenas, and (4) his continued denial of receiving his share of cash distributions despite overwhelming evidence to the contrary.

{¶ 20} The court found that appellant, as an attorney, is held to the standards set out by the rules governing attorneys in the state of Ohio. The court noted that at the hearing on the estate's motion, appellant continued to argue the same frivolous matters that caused the estate to file the motion in the first place.

{¶ 21} The court found that the amount of allowable attorney fees for an estate of this size pursuant to the court's local rules was $12,845. The court subtracted that amount from the actual attorney fees incurred, which was $35,901.43, and obtained a difference of $23,056.43. The court sanctioned

appellant $23,056.43 and ordered that he pay it to the estate's counsel.  It is from this judgment that appellant now appeals.[1]

## II. Crim.R. 11 and R.C. 2323.51

{¶ 22} Ohio law provides two separate mechanisms for an aggrieved party to recover attorney fees for frivolous conduct: R.C. 2323.51 and Civ.R. 11.  *Sigmon v. S.W. Gen. Health Ctr.*, 8th Dist. Cuyahoga No. 88276, 2007-Ohio-2117, ¶ 14. Although both authorize the award of attorney fees as a sanction for frivolous conduct, they have separate standards of proof and differ in application.  *Id.*  In this case, Neiden brought her motion for sanctions against appellant under both Civ.R. 11 and R.C. 2323.51.

{¶ 23} Notably, both R.C. 2323.51 and Civ.R. 11 allow for the imposition of sanctions against a pro se litigant.[2]  *See Burrell v. Kassicieh*, 128 Ohio App.3d 226, 231-232, 714 N.E.2d 442 (3d Dist.1998) (trial court's sanctions against pro se litigant under Civ.R. 11 and R.C. 2323.51 upheld).  Under Ohio law, pro se litigants are held to the same standard as all other litigants; that is, they must comply with the rules of procedure and must accept the consequences of their own mistakes.  *Kilroy v.*

---

[1] After appellant filed his notice of appeal, he moved this court to supplement the record with transcripts and exhibits that "had been filed with the court on February 28, 2018 (relative to the objections to the magistrate's decision of 12/22/17)."  We initially granted his motion until it became clear that the records that appellant was attempting to supplement were not before the trial court.  We ultimately struck the supplemental record.

[2] Appellant was once a licensed attorney in the state of Ohio.  He informed this court at oral argument that his status is now inactive.  He filed his pleadings in this case as a pro se litigant.

*B.H. Lakeshore Co.*, 111 Ohio App.3d 357, 363, 676 N.E.2d 171 (8th Dist.1996). Further, the mere fact that a party is pro se does not shield the party from the imposition of sanctions when the party engages in frivolous conduct. *Burrell* at 232. Indeed, a court's refusal to hold a pro se litigant to the same standard as an attorney who engages in frivolous and egregious conduct would only defeat the purpose of R.C. 2323.51 and Civ.R. 11: to deter vexatious and harassing litigation.

{¶ 24} Civ.R. 11 governs the signing of pleadings, motions, and other documents and provides in pertinent part that:

> Every pleading, motion, or other document of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address, attorney registration number, telephone number, facsimile number, if any, and business e-mail address, if any, shall be stated. A party who is not represented by an attorney shall sign the pleading, motion, or other document and state the party's address. A party who is not represented by an attorney may further state a facsimile number or e-mail address for service by electronic means under Civ.R. 5(B)(2)(f). Except when otherwise specifically provided by these rules, pleadings, as defined by Civ.R. 7(A), need not be verified or accompanied by affidavit. The signature of an attorney or pro se party constitutes a certificate by the attorney or party that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a document is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the document had not been served. For a willful violation of this rule, an attorney or pro se party, upon motion of a party or upon the court's own motion, may be subjected to appropriate action, including an award to the opposing party of expenses and reasonable attorney fees incurred in bringing any motion under this rule. Similar action may be taken if scandalous or indecent matter is inserted.

{¶ 25} In deciding whether a violation under Civ.R. 11 was willful, the trial court must apply a subjective bad-faith standard. *Riston v. Butler*, 149 Ohio App.3d 390, 2002-Ohio-2308, 777 N.E.2d 857, ¶ 12 (1st Dist.). In *State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Commrs.*, 127 Ohio St.3d 202, 2010-Ohio-5073, 937 N.E.2d 1274, the Ohio Supreme Court described "bad faith" as

> a general and somewhat indefinite term. It has no constricted meaning. It cannot be defined with exactness. It is not simply bad judgment. It is not merely negligence. It imports a dishonest purpose or some moral obliquity. It implies conscious doing of wrong. It means a breach of a known duty through some motive of interest or ill will. It partakes of the nature of fraud. * * * It means "with actual intent to mislead or deceive another."

*Id.* at ¶ 8, quoting *Slater v. Motorists Mut. Ins. Co.*, 174 Ohio St. 148, 187 N.E.2d 45 (1962), *overruled on other grounds, Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397 (1994).

{¶ 26} The decision to grant sanctions under Civ.R. 11 rests with the sound discretion of the trial court. *Grimes v. Oviatt*, 8th Dist. Cuyahoga No. 104491, 2017-Ohio-1174, ¶ 27, citing *Taylor v. Franklin Blvd. Nursing Home, Inc.*, 112 Ohio App.3d 27, 677 N.E.2d 1212 (8th Dist.1996); *Bardwell* at ¶ 9. Thus, a reviewing court will not reverse a trial court's decision denying or granting sanctions under Civ.R. 11 absent an abuse of discretion. *Id.*; *Jurick v. Jackim*, 8th Dist. Cuyahoga No. 89997, 2008-Ohio-2346, ¶ 6.

{¶ 27} A motion for sanctions under R.C. 2323.51 requires a trial court to determine whether the challenged conduct constitutes frivolous conduct as defined in the statute, and, if so, whether any party has been adversely affected by the

frivolous conduct. *Riston* at ¶ 17. R.C. 2323.51 applies an objective standard in determining frivolous conduct, as opposed to a subjective one. *Bikkani v. Lee*, 8th Dist. Cuyahoga No. 89312, 2008-Ohio-3130, ¶ 22. The finding of frivolous conduct under R.C. 2323.51 is determined without reference to what the individual knew or believed. *Ceol v. Zion Indus., Inc.*, 81 Ohio App.3d 286, 289, 610 N.E.2d 1076 (9th Dist.1992).

{¶ 28} "Frivolous conduct" is defined under the statute as conduct that satisfies any of the following:

> (i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.

> (ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

> (iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

> (iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

R.C. 2323.51(A)(2)(a)(i)-(iv).

{¶ 29} R.C. 2323.51 was not intended to punish mere misjudgment or tactical error. *Turowski v. Johnson*, 70 Ohio App.3d 118, 123, 590 N.E.2d 434 (9th Dist.1991), citing *Stephens v. Crestview Cadillac*, 64 Ohio App.3d 129, 580 N.E.2d 842 (10th Dist.1989). Instead, the statute was designed to chill egregious,

overzealous, unjustifiable, and frivolous action. *Turowski v. Johnson*, 68 Ohio App.3d 704, 706, 589 N.E.2d 462 (9th Dist.1990). The statute serves to deter abuse of the judicial process by penalizing sanctionable conduct that occurs during litigation. *Filonenko v. Smock Constr., L.L.C.*, 10th Dist. Franklin No. 17AP-854, 2018-Ohio-3283, ¶ 14.

{¶ 30} An R.C. 2323.51 determination to impose sanctions involves a mixed question of law and of fact. *Resources for Healthy Living, Inc. v. Haslinger*, 6th Dist. Wood No. WD-10-073, 2011-Ohio-1978, ¶ 26. We review purely legal questions de novo. *Riston*, 149 Ohio App.3d 390, 2002-Ohio-2308, 777 N.E.2d 857, at ¶ 22. Whether a claim or defense is legally groundless is a question of law. *Id.* The test is whether no reasonable lawyer would have raised the claim or defense in light of existing law. *Pitcher v. Waldman*, 1st Dist. Hamilton No. C-160245, 2016-Ohio-5491, ¶ 15. On factual issues, however, we give deference to the trial court's factual determinations because the trial judge, of course, will have had the benefit of observing the entire course of proceedings and will be most familiar with the parties and attorneys involved. *Riston* at ¶ 25. The ultimate decision as to whether to grant sanctions under R.C. 2323.51 rests within the sound discretion of the trial court. *Id.* at ¶ 27; *State ex rel. Stryker v. Cline*, 130 Ohio St.3d 214, 2011-Ohio-5350, 957 N.E.2d 19, ¶ 11.

## III. Analysis

### A. "Structured Money Laundering"

{¶ 31} Appellant first contends that the trial court erred when it found that his conduct was frivolous with respect to his "persistent allegation of money laundering" despite no evidence of such. We disagree.

{¶ 32} Throughout the proceedings, including in his brief to this court, appellant attempted to show that decedent, with the assistance of his two siblings who had joint and survivor bank accounts with decedent, committed "structured money laundering" by removing $2,500 per month, sometimes from two bank accounts, for years. The money that was in these accounts was decedent's money. There was no allegation that decedent stole this money or received it illegally somehow. Nor was there any evidence that decedent was somehow using the money that she removed from these accounts in any illegal manner. Removing $2,500 or $5,000 per month from one's own bank account without an illegal purpose is not a crime.

{¶ 33} Further, the magistrate and the trial court repeatedly told appellant that these allegations, if true, would amount to concealment of assets that had to be brought in a separate action. The magistrate further told appellant that these transactions occurred before decedent passed away, and thus, were not relevant to the inventory of the estate. Despite being warned over and over again, appellant continued to question his siblings about these transactions. There were no

allegations that decedent was not of sound mind. In fact, appellant agreed that decedent was of sound mind.

{¶ 34} At the hearing on Neiden's motion for sanctions and in his brief to this court, appellant continued to make these same arguments regarding "structured money laundering" without any basis in law or fact. Accordingly, we find no error on the part of the trial court with respect to this finding.

**B. Joint and Survivor Bank Accounts**

{¶ 35} Appellant next argues that the trial court erred when it found that his conduct was frivolous with respect to his "insistence that bank accounts should be listed as assets of the estate despite the fact that the disputed accounts were joint accounts and by law not estate assets." Appellant maintains that he never requested or insisted that the bank accounts should be listed as assets of the estate, but he argues that these joint and survivor bank accounts were "constructive trusts" and that his siblings who were on the accounts with decedent are "fiduciaries" of these constructive trusts. "[A] constructive trust will be imposed where there is some ground such as fraud, duress, undue influence or mistake upon which equity will grant relief." *Henkle v. Henkle*, 75 Ohio App.3d 732, 739, 600 N.E.2d 791 (12th Dist.1991), citing *Croston v. Croston*, 18 Ohio App.2d 159, 247 N.E.2d 765 (4th Dist.1969).

{¶ 36} Here, the evidence established that decedent was of sound mind when she chose two of her children, Mary Pat and Michael, to open joint and survivor accounts with her. Again, appellant admitted that his mother was of sound mind.

By opening these accounts with two of her children, decedent chose to place these funds outside of her estate. Appellant, however, cross-examined Mary Pat and Michael extensively about these accounts with the bank records that he obtained via subpoena without serving the estate. We note that appellant also cross-examined Mary Pat about her own personal bank account — not the one she shared with her mother — records that appellant had improperly obtained via subpoena.

{¶ 37} We note that throughout the hearings on appellant's and Hamman's exceptions to the inventory and motions to remove Neiden as the administratrix, the magistrate warned appellant countless times to stick to relevant matters. The magistrate continued to tell appellant to ask questions regarding the inventory of the estate. By continuing to question his siblings about bank accounts that were not part of the estate, we agree with the trial court that appellant's conduct was frivolous.

{¶ 38} We further note that the magistrate and trial court also continued to admonish appellant to not bring up hearsay matters, either when questioning his siblings or testifying himself, yet appellant continued to do so over and over. Moreover, appellant incredulously continued to argue about matters that he claimed his mother "told him" before she died at the sanctions hearing and in his brief to this court, without any evidence to support his claims.

### C. Subpoenas

{¶ 39} Appellant further argues that the trial court erred when it found his conduct was frivolous for not following the Rules of Civil Procedure when issuing subpoenas. We disagree.

{¶ 40} Civ.R. 45(A)(3) provides that "[a] party on whose behalf a subpoena is issued under division (A)(1)(b)(ii), (iii), (iv), (v), or (vi) of this rule shall serve prompt written notice, including a copy of the subpoena, on all other parties as provided in Civ.R. 5." The record establishes that appellant did not timely serve the estate with subpoenas that he issued. Not only that, appellant subpoenaed decedent's bank records that were not part of the estate's assets and also wrongly subpoenaed the personal bank records of one of his siblings that were wholly unrelated to the administration of the estate. Without serving the estate a copy of the subpoenas, appellant deprived the estate of the opportunity to move to quash the improper subpoenas. Appellant then used the documents that he improperly obtained to cross-examine his siblings about matters unrelated to the administration of his mother's estate.

{¶ 41} Appellant admits that he did not timely serve the estate, but claims that he subpoenaed these records because his siblings refused to give him copies of them when he requested them. Appellant had no right to many of these records and could have followed the proper rules of discovery to obtain any records that he was entitled to obtain. Appellant's actions were improper, unethical, and frivolous.

### D. Cash Found After Death

{¶ 42} Finally, appellant claims that the trial court's finding that his actions were frivolous because he continued to deny that he received his share of monies that he and his siblings found in decedent's home after her death was error. After review, we find appellant's arguments related to this finding to be frivolous. The

magistrate found that every other sibling acknowledged receiving his or her share and that two of the siblings testified that they witnessed appellant receive his portion. Appellant continued to claim that he did not, against overwhelming evidence that he did. We find no error in the trial court's finding that appellant's claims were frivolous.

### E. Sanction Award

{¶ 43} Appellant further argues that even if his conduct was frivolous, the trial court erred in sanctioning him $23,056.23. He maintains that the trial court's number, which equaled the amount of attorney fees incurred over the amount permitted for an estate this size under Loc.R. 71.1 of the Court of Common Pleas of Cuyahoga County, Probate Division "arbitrarily assume[d] that any increase in fees above the threshold amount is attributable" to appellant. We disagree that the trial court's calculation was arbitrary. The trial court presided over the case for two-and-a-half-plus years, continually admonishing appellant that he was wasting the court's — and everyone else's — time by bringing up matters that were not relevant to the administration of the estate.

{¶ 44} Even in the hearing on Neiden's motion for sanctions, appellant spent the entire hearing attempting to bring up the exact same matters again (and that he has also raised to this court). At the beginning of appellant's testimony during the sanction hearing, the trial court warned appellant:

> I'm going to caution you because I read your response, and it appears
> to reiterate all the arguments that you've made throughout the course
> of this case and that the court has already ruled on. If you proceed to

go off on these tangents about matters not in the record, I think you're only proving the point that [the estate's counsel] is making that you don't know when to stop with the arguments even when the court has ruled against you.

{¶ 45} Appellant responded that he was trying to show the court his "state of mind" as to why he "proceeded as [he] did." Appellant continued to attempt to explain his "state of mind." Over the course of the short sanctions hearing, the trial court went to admonish appellant over 15 more times. At one point later in the hearing, the trial court warned appellant, "You're an attorney, Mr. O'Toole. You're held to a higher standard. I have never seen a case like this where somebody couldn't figure out what the next step was." The trial court subsequently warned appellant again, "You're not helping yourself. I'm trying to help you in the best way I can. The more you go on, the more you're proving [the estate's counsel's] point."

{¶ 46} At the end of presenting his arguments for sanctions at the hearing, counsel for the estate set forth his request for an award of $23,056.30 based upon the amount of attorney fees incurred minus the amount allowed for an estate this size under the local probate rules. The difference equaled $23,056.30. Appellant did not raise any of the arguments to the trial court that he is now raising on appeal with respect to this calculation. Issues that were not raised at the trial-court level cannot be raised for the first time on appeal, and thus, we do not need to address them now. *Greenwood v. Taft*, 105 Ohio App.3d 295, 302, 663 N.E.2d 1030 (1st Dist.1995), citing *Stores Realty Co. v. Cleveland*, 41 Ohio St.2d 41, 322 N.E.2d 629 (1975).

{¶ 47} In sum, appellant has failed to offer any evidence or argument to establish that the trial court committed an error or abused its discretion when it granted the estate's motion for sanctions under either Civ.R. 11 or R.C. 2323.51. Indeed, the estate's claims that appellant's actions can only be interpreted as an effort to entirely drain the estate of any money so that his siblings do not receive anything may have merit.

{¶ 48} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

MARY EILEEN KILBANE, A.J., and
EILEEN A. GALLAGHER, J., CONCUR