[Cite as *Cintrifuse Landlord, L.L.C. v. Panino, L.L.C.*, 2024-Ohio-5289.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CINTRIFUSE LANDLORD, LLC, | : | APPEAL NO. C-240062 |
| | | TRIAL NO. A-2000757 |
| Plaintiff/Counterclaim Defendant-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| PANINO, LLC, | : | |
| and | : | |
| NINO LORETO, | : | |
| Defendants/Counterclaim Plaintiffs/Third-Party Plaintiffs-Appellants, | : | |
| | : | |
| and | : | |
| REMO A. LORETO, et al., | : | |
| Defendants, | : | |
| and | : | |
| CINCINNATI CENTER CITY DEVELOPMENT CORPORATION, | : | |
| Third-Party Defendant. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed

Date of Judgment Entry on Appeal: November 6, 2024

*Taft Stettinius & Holliser LLP*, *Nicholas J. Pieczonka* and *Jada M. Colon*, for Plaintiff/Counterclaim Defendant-Appellee,

*Croskery Law Offices* and *Robert Croskery*, for Defendants/Counterclaim Plaintiffs/Third-Party Plaintiffs-Appellants.

**ZAYAS, Judge.**

{¶1} Appellants Panino, LLC, and Nino Loreto, ("Panino and Loreto") appeal the judgment of the Hamilton County Court of Common Pleas imposing sanctions against them and their counsel under R.C. 2323.51 and Civ.R. 11. For the reasons that follow, we reverse the judgment of the trial court.

## I. Factual and Procedural Background

{¶2} The underlying action from which this appeal arises began in February 2020 when appellee Cintrifuse Landlord, LLC, ("Cintrifuse") filed a "Complaint for Replevin, Breach of Contract, and Conversion" against Panino and Loreto.[1] In relevant part, the complaint alleged that Cintrifuse leased certain real property to Panino for the purpose of operating a restaurant and Loreto executed a guaranty of Panino's performance under the lease. The complaint further alleged that Panino then failed to pay certain rents due under the lease agreement and removed certain personal property in which Cintrifuse had a security interest under the lease agreement upon vacating the premises after being given notice to leave. In response to the complaint, Panino and Loreto filed certain counterclaims against Cintrifuse and third-party claims against Cintrifuse's parent company, Cincinnati City Center Development Corporation ("3CDC"), related to fraud in the inducement and breach of contract based on certain misrepresentations made about the availability of an outdoor patio/bar area that was thought to be crucial to the success of the restaurant.

{¶3} Cintrifuse later requested summary judgment in its favor "on all claims in the action." The trial court granted the motion and ordered that a hearing be held to ascertain Cintrifuse's damages. After the damages hearing, the trial court found

---

[1] Cintrifuse subsequently amended its complaint to add Remo and Patricia Loreto, Loreto's parents, as defendants.

that Cintrifuse was entitled to damages in the amount of $197,161.41. Panino and Loreto appealed, and Cintrifuse cross-appealed, the trial court's judgment.

{¶4} On appeal, this court reversed the trial court's judgment, except as to Panino and Loreto's counterclaims for fraudulent inducement and fraudulent omission, holding that genuine issues of material fact existed as to whether Cintrifuse satisfied its obligations under the "best efforts" provision in the lease agreement related to the patio/bar area. *See Cintrifuse Landlord, LLC v. Panino, LLC*, 2022-Ohio-4104 (1st Dist.).

{¶5} Upon remand, the case was assigned to the same judge that had previously granted summary judgment. At an initial hearing held in February 2023, the trial court attempted to get the parties to settle the case. Panino and Loreto filed a transcript of this proceeding in the trial court record. At the hearing, the court asked counsel for Panino and Loreto ("counsel") how much their claim was for. Counsel attempted to state that the claim was for "a couple million," when the trial court stated, "Right. I already made the determination that there is no way. That's all speculative. How do you come up with a couple million dollars? How do you know what the profits would have been had he added on this patio?" Counsel then was explaining the "two avenues to damages," when the trial court said, "People still go to McDonald's without patios." Counsel then mentioned that the patio would have been really good during Covid, and the court said, "Right. Still whether I have a patio or not my main restaurant still should be making money. So you can't say the lack of a patio. I'm just telling you the problems you're going to have." Nevertheless, the court said, "But if you want to go to trial, we'll go to trial."

{¶6} During further discussions, the court made other comments such as, "If the food's not good, then nobody's going to eat it. A patio is not going to make it so,"

and "You want everybody in the restaurant to be paid as if they were a nurse or working at a hotel?" But the court also made clarifying remarks such as, "I'm just telling you the problems you're going to have," or "I mean just me speaking out loud because I do that all the time." At one point, the court said, "If your clients are stuck on that 2 million dollar number then I'm not going to waste anymore [sic] time and we'll set it for trial and we'll do the Motion in Limine and then I'll start wiping things away and we'll come down to you're still paying attorney fees. He's still charging his client attorney fees." After further discussion, the court concluded, "Let's set it for Motion in Limine. Everybody file their Motion in Limine and I'll tell you what you can and can't present at trial and that may change the number drastically."

{¶7} In October 2023, the parties stipulated to the dismissal, with prejudice, of Cintrifuse's claims against Panino and Loreto. Consequently, the only claims remaining thereafter were Panino and Loreto's counterclaims against Cintrifuse for breach of contract and abuse of process, and against 3CDC for conspiracy to commit abuse of process.

{¶8} On October 30, 2023, the parties appeared for what was supposed to be a trial on the remaining claims. At the start of the proceeding, the court asked counsel, "[D]id you want to say something?" Counsel responded:

> I do. We had an off-the-record discussion in open court earlier today. During that discussion the court indicated the following:
>
> Number one, that it valued my client's case as a 'goose egg.' Number two, the Court believed it had read everything and would not change its finding whatever evidence was presented, and it knew as much about this case as Counsel. Number three, the Court believed it was right in finding on a breach of contract action that the Court of

4

Appeals was wrong, that it wished the case had gone to the Supreme Court. Number four, that even if the jury came back with a sizeable verdict the Court had the power of remitter and would not hesitate to use it, and even if it was reversed it would drag on for years.

{¶9} The court responded, "I agree." Counsel then expressed to the court that the court's off-the-record comments were violative of "Judicial Canons Rule 2.10(A) and (B)," and therefore the judge could not be impartial and "you should recuse yourself." The following exchange then occurred:

| | |
|---|---|
| Court: | Those were not impartial [sic]. Those were my findings of the case law, the facts in this case. Those were nothing impartial [sic]. I have nothing against your client or whoever the Plaintiff is. It does not matter. |
| Counsel: | Your honor – |
| Court: | Let me speak. You're accusing me of something that I – basically you want me off this case because you know that you need somebody in your favor and I'm not in anybody's favor. I read the facts. I read the case. And I'm telling you I already made the ruling. That's why I made the ruling that summary judgment was appropriate, so me saying that is nothing new. I've already said that in my decision a while ago. So everything you said, there's nothing new. Everything you said is absolutely correct. It's not bias. It's just my opinion of the case and I'm allowed to have that opinion. |

5

Counsel:    Your honor, the difference is this. For four of those five statements you might be accurate, but to make a statement whatever is presented in evidence during the case will not change your mind is a statement that you cannot be impartial.

Court:    Here's what you forget, Counsel. I don't have to make that decision. I'm not going to make a decision. The jury is going to make that decision. So what I think really does not matter. The jury is going to make that decision.

. . .

Counsel:    I respectfully submit, your Honor, that that comment that whatever comes in as evidence you are not going to change your mind is not consistent with impartiality, and that, therefore, you should recuse yourself. And if you're not willing to do that, Your Honor –

Court:    I'm not willing to do it because I'm not making the decision. It's not my decision to make.

The Court of Appeals already told me it's not my decision to make; it's the jury's decision to make. So it doesn't matter what I think. I will follow the rules. I will allow the evidence in as I see fit. But I'm not making the decision as to who wins this case. The jury is. Do you agree with me?

Counsel:    No, sir, I do not.

Court:    Who is going to make the decision?

Counsel:    Here's why I disagree with you.  I disagree with you because the comments that you made in open court and off the record this morning, that comment itself violates Rule. 2.10.

Court:      I disagree.  But if you want to take me to the Supreme Court, please do so.

Counsel:    In that case I would need a continuance of a day to file an Affidavit of Disqualification with the Supreme Court.

Court:      Counsel.

P. Counsel: We're here to try this.  We want to finally bring this case to an end.

Counsel:    I want to try it too.

P. Counsel: I can't prevent him from doing it.  I don't agree that there is any basis.

Court:      I stick by what I said.  And if the Supreme Court says I'm wrong for saying that, I've already made that decision. I've already written it down and it went to the Court of Appeals.  They told me to let the jury decide.  That's exactly what I'm going to do.  So if I already made that decision, what is improper about what I said?

Counsel:    As I said, Your Honor.  I believe that what you said is violative of the appearance of impartiality.  I could be wrong.

Court:      That's what happens all the time.  When people feel like they're at a disadvantage and they may lose they want to

7

attack the messenger rather than attack the case. And I get that all the time. I'm okay with that. Attack the messenger. I mean, get me kicked off the case and start over.

Counsel: Your Honor, I believe we're going to win. What I'm worried about is if we win the case and we're faced with a directed verdict or a remitter or something that comes in because you have already made up your mind, and you've already said you made up your mind.

. . .

Counsel: It's not that I don't like what you're thinking, Your Honor. It's that I believe that what you are saying is inconsistent with the appearance of impartiality. That's a distinction. I'm not saying anything against you, but I don't know you very well. I've had a lot of fine play with many judges over many years and I've never filed an affidavit of disqualification, but I believe in this case its warranted. I hate to do that. I'd rather go to trial too, but I just believe it would not be fair to my clients to go to trial knowing I have a judge that whatever is said at trial is not going to change his mind, that believes the case is worth a goose egg and is going to hold the power of remitter over their heads and also say this could drag on for years.

{¶10} The court and counsel then engaged in further back-and-forth about whether everything the trial court said was "true." The court said that the case was

8

going to "drag on for another year," and counsel said, "I hope not. I hope we can get you off the case quickly and get it retried." After the court further explained its point of view on the case, it said, "If you're asking for a continuance, then ask for the continuance." Counsel then requested a continuance "long enough to file an Affidavit of Disqualification," and Cintrifuse's counsel opposed the continuance. The court then stated, "I have no choice. If he wants me off, he wants me off. I just think it's a delay tactic, but that's my opinion." The court again explained, "I was telling you what I have the power of, which is all accurate, to help you see where we are and where everybody else is. Maybe then we would come to a resolution that both parties are not happy with but they're willing to walk away with." Counsel again stated his belief that the court should recuse itself based on the earlier comments and said, "Since you're unwilling to do that, it's my duty as an officer of the Court, as I see it, to file an Affidavit of Disqualification. They may tell me I'm wrong. I've been told I'm wrong before." Cintrifuse's counsel then noted that it "may be filing a motion this is just being done to interpose delay, so we may be filing a motion to ask for attorney fees paid for having to prepare for trial, ready to go and just another again moving target which we've been dealing with this entire litigation." Counsel responded, "Believe me, we don't want to delay this trial." The court then noted that it had jurors ready to go, but concluded by saying, "File your motion."

{¶11} On November 1, 2023, the Ohio Supreme Court entered an order depriving the trial judge of any authority to preside over the proceedings until the chief justice ruled on the affidavit of disqualification, filed on October 31, 2023, which sought to disqualify the judge from the matter.

{¶12} On November 2, 2023, Cintrifuse filed a motion for sanctions against Panino, Loreto, and counsel for "frivolous conduct and delay tactics," based on what

9

occurred at the October 30 hearing, under Civ.R. 11 and R.C. 2323.51. The motion asserted that the "day-of-trial demand" that the trial court recuse itself and that the trial be continued while defendants file an affidavit of disqualification was "improper and clearly made for the improper purpose of delay and forum shopping and [was] not supported or warranted under existing law."

{¶13} On December 11, 2023, the Ohio Supreme Court entered a decision finding that counsel did not establish that the trial judge should be disqualified from the matter. The Court found that counsel failed to establish that the judge would not ultimately accept the authority of this court and failed to establish that the off-the-record remarks demonstrated a "fixed anticipatory judgment" requiring disqualification. Further, the Court found that whether the judge violated the Judicial Canons was "beyond the scope" of the chief justice's authority to decide in an affidavit of disqualification.

{¶14} The parties thereafter appeared before the trial court on December 20, 2023. When discussing setting a hearing on the motion for sanctions, Cintrifuse's counsel said, "I don't think it's going to be much in the way of evidence. I think we can stipulate the evidence, which would be transcript, the affidavit and our attorney fees." The judge responded, "We already know that the affidavit is frivolous, so now it's just a matter of how much I'm going to give you for your attorney fees." Panino and Loreto's counsel then said, "Your honor, I would contest the affidavit was filed frivolous [sic]. The actual finding was that it did not rise to the standard of meeting the burden of proof." The judge responded, "You're going to keep arguing with me, I'm just going to keep making my decision." Regarding the hearing, counsel said, "I don't need a hearing on the sanctions. I'll tell you that right now. If they want one obviously they're entitled to one, but I don't need one. And what their fees are, they

10

are." Counsel then started to raise an issue related to bifurcation of the proceedings at trial. The judge then said, "There are no more problems. So you want more delay tactics. Is that what you're doing? You're just going to keep delaying this and every time I'm going to be right because I do read the law and I do do things by the law. As the Supreme Court said, I did everything right. So keep delaying. I'll keep giving them fees. I don't care. So file whatever motions you need." After further back-and-forth, the court confirmed that counsel was waiving the hearing on the motion for sanctions, and counsel agreed, saying "Yes. I don't need a hearing."

**{¶15}** After further responsive briefing, the trial court granted the motion for sanctions on January 4, 2024. The judge found that counsel's request for him to disqualify himself from future proceedings was done for the purpose of improper delay in violation of Civ.R. 11 and R.C. 2323.51. The judge then found that Cintrifuse incurred attorney fees in the amount of $40,521.94 "as a result of the violations of Civ.R. 11 and R.C. 2323.51," and ordered that Panino, Loreto, and their counsel "jointly and severally" pay Cintrifuse this amount "immediately" upon entry of the order. The court expressly found that this amount was reasonable based on the affidavit from Nicholas J. Pieczonka.

**{¶16}** The affidavit of Pieczonka asserted that his law firm (1) advised Cintrifuse, (2) prepared for the trial scheduled for October 30, 2023, and (3) drafted, filed, and litigated a motion for sanctions, and claimed that only 25 percent of the time spent preparing for trial "will not be wasted." The affidavit then opined that the amount requested based on the attached time report—$40,521.91—was reasonable.

**{¶17}** On January 11, 2024, the Ohio Supreme Court again entered an order depriving the trial judge of authority to preside over the matter based on another

affidavit of disqualification that was filed on January 10, 2024, requesting that he be disqualified from presiding over the matter.

{¶18} That same day, Panino and Loreto filed a motion in the trial court to stay enforcement of the sanctions order "until the sanctions can be appealed at the conclusion of trial." The trial court denied the motion on January 22, 2024, several days after the Ohio Supreme Court's order depriving the trial judge of authority to preside over the matter was filed in the trial court record (the order was filed in the trial court on January 17, 2024).

{¶19} Panino and Loreto thereafter filed a notice of appeal on January 25, 2024, from the trial court's judgment ordering sanctions. That same day, they filed a motion with this court seeking a stay of the trial court's order granting sanctions. This court granted the stay on February 15, 2024, conditioned on the posting of a supersedeas bond.

{¶20} The result of the second affidavit of disqualification that was filed is not in the record before this court.

## II. Law and Analysis

{¶21} Panino and Loreto now present three assignments of error to this court, each asserting various ways in which the trial court supposedly erred in awarding sanctions against them and their counsel. However, because we ultimately hold that the second assignment of error is dispositive of the appeal, we address the second assignment of error first.

{¶22} In their second assignment of error, Panino and Loreto argue, in essence, that the trial court erred in imposing sanctions against them and their counsel where the record does not reveal that they took any actions for the purpose of causing unnecessary delay.

**{¶23}** "Ohio law provides an aggrieved party with two separate mechanisms to recover attorney fees for frivolous conduct." *Feagan v. Bethesda North Hosp.*, 2024-Ohio-166, ¶ 9 (1st Dist.), citing *Marconi v. Savage*, 2016-Ohio-289, ¶ 22 (8th Dist.). ""Although both authorize an award of attorney fees as a sanction for frivolous conduct, they have separate standards of proof and differ in application."" *Id.*, quoting *Marconi* at ¶ 22. We address each mechanism in turn.

### A. Frivolous Conduct Under R.C. 2323.51

**{¶24}** "First, R.C. 2323.51(B)(1) authorizes a court to award court costs and reasonable attorney fees to a party adversely affected by 'frivolous conduct' in a civil action or appeal." *Id.* at ¶ 10. Relevant to our purposes here, frivolous conduct under this statute includes a party's assertion of a position or the taking of any action in connection with the civil action when the position or action is taken for the improper purpose of causing unnecessary delay. R.C. 2323.51(A)(1)(a) and (A)(2)(a)(i).

**{¶25}** "'The standard of review to be applied to a trial court's decision on a request for sanctions under R.C. 2323.51 depends on whether there are question of law or fact or mixed questions of law or fact.'" *Feagan*, 2024-Ohio-166, at ¶ 15 (1st Dist.), citing *Fannie Mae v. Hirschhaut*, 2019-Ohio-3636, ¶ 26 (1st Dist.). "'We review purely legal questions de novo.'" *Id.*, citing *Fannie Mae* at ¶ 26. "'On factual issues, we give deference to the trial court's factual determinations, which will not be disturbed if they are supported by competent, credible evidence.'" *Id.*, citing *Fannie Mae* at ¶ 26. "'The ultimate decision as to whether to grant sanctions under R.C. 2323.51 rests within the sound discretion of the trial court.'" *Id.*, citing *Fannie Mae* at ¶ 27. "'An abuse of discretion occurs if the trial court's decision is 'unreasonable, arbitrary, or unconscionable.'" *Id.*, citing *Fannie Mae* at ¶ 27.

**{¶26}** In this case, the trial court found that "the request that the Court disqualify itself from future proceedings in this matter" was frivolous conduct under R.C. 2323.51 as it was done for the purpose of causing unnecessary delay.

**{¶27}** However, after a thorough review of the record, we fail to find any evidence to support the determination that counsel's request was made for the improper purpose of causing unnecessary delay.

**{¶28}** Notably, there is no evidence in the record to indicate that Panino and Loreto were not appropriately prepared for trial that day. *Compare A.H. v. T.H.*, 2023-Ohio-1969 (8th Dist.). Rather, the record shows that, leading up to October 20, 2023, (the date of the request for recusal on the date of trial) Panino and Loreto filed an expert report in compliance with the trial court's scheduling order, filed a supplemental expert report, engaged in extensive motion practice and responsive briefing, engaged in depositions, filed proposed jury instructions, and filed several pretrial statements in advance of trial that included exhibit and witness lists, with the most recent being filed just a few days prior to the date set for trial (filed on October 25, 2023).

**{¶29}** Further, the record does not show any discovery issues or anything that could infer a need for a delay, and there is no indication in the record of any benefit gained by a delay of the proceedings. *Compare 217 Williams, LLC v. Worthen*, 2019-Ohio-2559 (1st Dist.). For example, there is no indication that counsel was attempting to use the delay as leverage to advance settlement negotiations.

**{¶30}** Rather, the record shows that counsel made the request for the trial court to recuse itself based on comments the trial court made immediately prior to going on the record the day the trial was scheduled. While this conduct undoubtedly caused some delay, there is nothing in the record to support that the request was made

14

*for the purpose* of causing unnecessary delay. *See Wagner v. Cormeg, Inc.*, 2011-Ohio-1205 (5th Dist.).

**{¶31}** Consequently, the record before us lacks competent, credible evidence from which the trial court could have found that counsel for Panino and Loreto acted for the purpose of causing unnecessary delay. Therefore, we hold that the trial court abused its discretion in awarding sanctions against Panino and Loreto and their counsel under R.C. 2323.51.

### B. Sanctions Under Civ.R. 11

**{¶32}** The second mechanism to recover attorney fees for frivolous conduct is an award of sanctions under Civ.R. 11. "In ruling on a motion for sanctions made pursuant to Civ.R. 11, a court 'must consider whether the attorney signing the document (1) has read the pleading, (2) harbors good grounds to support it to the best of his or her knowledge, information, and belief, and (3) did not file it for the purposes of delay.'" *Feagan*, 2024-Ohio-166, at ¶ 13 (1st Dist.), citing *Sigmon v. Southwest Gen. Health Ctr.*, 2007-Ohio-2117, ¶ 18 (8th Dist.). "The rule 'employs a subjective bad-faith standard to invoke sanctions by requiring that any violation of Civ.R. 11 must be willful.'" *Id.*, citing *Evans v. Quest Diagnostics, Inc.*, 2015-Ohio-3320, ¶ 18 (1st Dist.). "The standard of review to be applied to a trial court's decision on a request for sanctions under Civ.R. 11 is an abuse of discretion." *Id.*, citing *Fannie Mae*, 2019-Ohio-3636, at ¶ 43 (1st Dist.).

**{¶33}** The trial court awarded sanctions under Civ.R. 11 based on its same finding that counsel's request that the court disqualify itself from future proceedings was done for the improper purpose of delay. For the same reasons outlined above, the trial court similarly abused its discretion in awarding sanctions under Civ.R. 11 as the record does not support that counsel acted for the purpose of causing improper delay.

Consequently, we similarly hold that the trial court abused its discretion in awarding sanctions against Panino, Loreto, and their counsel under Civ.R. 11.

### III. Conclusion

**{¶34}** Based on all the foregoing, we sustain the second assignment of error and reverse the judgment of the trial court awarding sanctions against Panino, Loreto, and their counsel.

**{¶35}** Further, based on our resolution of the second assignment of error, the remaining assignments of error are moot, and we decline to address them. *See* App.R. 12(A)(1)(c); *Evans v. Walmart Defiance Supercenter*, 2024-Ohio-4630, ¶ 24 (3d Dist.), quoting *Sullinger v. Reed*, 2021-Ohio-2872, ¶ 52 (3d Dist.) ("'Put differently, an assignment of error is moot when an appellant presents issues that are no longer live as a result of some other decision rendered by the appellate court.'"); *State v. Gideon*, 2020-Ohio-5635, ¶ 26.

Judgment reversed.

**BOCK, P.J.,** and **CROUSE, J.,** concur.

Please note:

The court has recorded its own entry this date.