[This opinion has been published in *Ohio Official Reports* at 178 Ohio St.3d 1227.]

IN RE DISQUALIFICATION OF TRIGGS.

CINTRIFUSE LANDLORD, L.L.C. *v.* PANINO, L.L.C.

[Cite as *In re Disqualification of Triggs*, 2025-Ohio-983.]

*Judges—Affidavits of disqualification—R.C. 2701.03—Affidavit of disqualification
 granted to allay any concerns about fairness and integrity of proceedings
 and to assure parties and public of unquestioned neutrality of trial judge.*

(No. 24-AP-199—Decided January 30, 2025.)

ON AFFIDAVIT OF DISQUALIFICATION in Hamilton County Court of Common

Pleas, General Division, Case No. A2000757.

_____

KENNEDY, C.J.

{¶ 1} Robert Croskery, the attorney for Panino, L.L.C., and Nino Loreto, the defendants in the underlying civil case, has filed a third affidavit of disqualification pursuant to R.C. 2701.03 seeking to disqualify Judge Alan C. Triggs of the Hamilton County Court of Common Pleas, General Division, from presiding over the case. Judge Triggs filed a response to the affidavit of disqualification.

{¶ 2} The original affidavit of disqualification was denied on December 11, 2023. *See In re Disqualification of Triggs*, Supreme Court case No. 23-AP-167. The second affidavit of disqualification was denied on March 6, 2024. *See In re Disqualification of Triggs*, Supreme Court case No. 24-AP-004.

{¶ 3} As explained below, to allay any concerns about the fairness and integrity of the proceedings and to assure the parties and the public of the unquestioned neutrality of the trial judge, the affidavit of disqualification is granted. The administrative judge of the Hamilton County Court of Common Pleas, General

Division, shall randomly reassign the case to another judge of the division in accordance with Sup.R. 36.019(A).

**Trial-Court Proceedings**

{¶ 4} The facts of the underlying case were discussed in *In re Disqualification of Triggs*, Supreme Court case Nos. 23-AP-167 and 24-AP-004. In brief, Cintrifuse Landlord, L.L.C., entered a lease with Panino, a restaurant owned and operated by Loreto, in which Cintrifuse promised to use its "best efforts" to obtain any approvals necessary to purchase land to build a restaurant patio in an adjacent park. However, the patio never got built; the restaurant struggled, Panino and Loreto stopped paying rent, and Cintrifuse sued for breach of contract, among other claims. Panino and Loreto counterclaimed for breach of contract, bad-faith breach of contract, and abuse of process. *See Cintrifuse Landlord, L.L.C. v. Panino, L.L.C.*, 2022-Ohio-4104, ¶ 2-6 (1st Dist.).

{¶ 5} On the day the matter was set to go to trial, Judge Triggs granted Cintrifuse's motion for summary judgment. *Id.* at ¶ 8. Panino and Loreto appealed, and the First District Court of Appeals reversed and remanded, holding that there were genuine issues of material fact regarding whether Cintrifuse had used its best efforts to obtain the approvals necessary to acquire land for a patio to be built. *Id.* at ¶ 78.

{¶ 6} On the day of the rescheduled trial, Judge Triggs made off-the-record remarks concerning his assessment of the merits of the cross-claims. The judge denied Croskery's motion for him to recuse but granted a continuance to allow Croskery to file the first affidavit of disqualification, which, as noted above, was subsequently denied.

{¶ 7} Cintrifuse moved for sanctions, asserting that Croskery's motions for the judge to recuse and to continue the trial were frivolous and had been filed on the day of trial for delay. Judge Triggs granted the motion for sanctions and awarded $40,521.94 in attorney fees to Cintrifuse. The First District stayed the

sanctions order and subsequently reversed the award of attorney fees. *Cintrifuse Landlord, L.L.C. v. Panino, L.L.C.*, 2024-Ohio-5289, ¶ 19, 34 (1st Dist.). In the meantime, Croskery's business and personal bank accounts were frozen and garnished.

{¶ 8} Trial was again rescheduled. On the day of trial, before opening statements had been given, Croskery asked Judge Triggs to recuse because the judge had said off the record, "I don't like you . . . [and] you don't like me." The judge denied the motion and again gave his assessment of Croskery's clients' claims. Judge Triggs said that based on his review of the law, those claims would not survive a motion for directed verdict because Panino and Loreto had breached the contract when they failed to pay rent. Croskery asserted that he could prove an anticipatory breach because Cintrifuse had not fulfilled the best-efforts promise that was included in the contract with Panino and Loreto when time was of the essence, which caused Panino to go out of business and prevented Panino and Loreto from paying rent. According to Croskery, the judge encouraged Cintrifuse to move for a directed verdict. After opening statements, Judge Triggs orally granted the motion for a directed verdict.

{¶ 9} Croskery filed this third affidavit of disqualification on December 30, 2024.

**Affidavit-of-Disqualification Proceedings**

{¶ 10} R.C. 2701.03(A) provides that if a judge of a court of common pleas "allegedly is interested in a proceeding pending before the court, allegedly is related to or has a bias or prejudice for or against a party to a proceeding pending before the court or a party's counsel, or allegedly otherwise is disqualified to preside in a proceeding pending before the court," then that party or the party's counsel may file an affidavit of disqualification with the clerk of this court.

{¶ 11} Croskery alleges that Judge Triggs is biased against him and his clients and has created the appearance of bias. He maintains that the judge has

formed a "fixed anticipatory judgment" against his clients by disregarding the mandate of a superior court ordering the judge to allow the claims to be decided by a jury. According to Croskery, the First District's reversal of Judge Triggs's grant of summary judgment and its finding that there are triable issues precluded Judge Triggs from entering a directed verdict. Croskery claims that the judge advocated on behalf of Cintrifuse and aggressively questioned him in "a sneering tone." He also points to the First District's reversal of Judge Triggs's award of sanctions and its determination that there was no frivolous conduct. Croskery notes the judge's error in bifurcating the trial, and he refers to an instance in which the judge continued trial when one of Cintrifuse's witnesses had "an undisclosed family matter" but pointedly did not grant Croskery's own motion to appear at a hearing by telephone. Lastly, Croskery submits that Judge Triggs admitted he did not like Croskery.

{¶ 12} Judge Triggs asserts that he has no bias or prejudice against Croskery or Croskery's clients and instead has made legal decisions based on his understanding of the issues in the case and the law that applies to them. He says that Croskery simply disagrees with his legal rulings, seeks to delay the proceedings, and would prefer a trial in which counsel can "throw[] out a multitude of issues and accusations in hopes that one takes root with the jury." The judge explains that he granted the directed verdict after opening statements based on his interpretation and application of the law to the case, not because of bias. Judge Triggs maintains that he has read every filing, listened to arguments, and applied the law in a fair and unbiased manner. However, the judge does not deny saying that he does not like Croskery.

## Disqualification of a Common-Pleas-Court Judge

{¶ 13} As explained above, R.C. 2701.03(A) provides two specific grounds and a catchall provision for the disqualification of a judge of a court of common pleas. Granting or denying an affidavit of disqualification turns on whether the

chief justice determines that the interest, bias or prejudice, or disqualification alleged in the affidavit exists.  R.C. 2701.03(E).

{¶ 14} The burden falls on the affiant to submit "specific allegations on which the claim of interest, bias, prejudice, or disqualification is based and the facts to support each of those allegations."  R.C. 2701.03(B)(1).  Therefore, "[a]n affidavit must describe with specificity and particularity those facts alleged to support the claim."  *In re Disqualification of Mitrovich*, 2003-Ohio-7358, ¶ 4.

{¶ 15} As stated above, Croskery alleges that Judge Triggs is biased against him and his clients and that the judge should be disqualified to avoid the appearance of bias.

{¶ 16} R.C. 2701.03(A) "speaks in terms of *actual* bias and prejudice." (Emphasis in original.)  *In re Disqualification of Berhalter*, 2023-Ohio-4881, ¶ 29. The General Assembly did not define "bias or prejudice" for purposes of the statute. However, as explained in prior disqualification cases, "[t]he term 'bias or prejudice' 'implies a hostile feeling or spirit of ill-will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts.'"  *In re Disqualification of O'Neill*, 2002-Ohio-7479, ¶ 14, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 469 (1956).  "'Bias or prejudice on the part of a judge will not be presumed.  In fact, the law presumes that a judge is unbiased and unprejudiced in the matters over which he presides, and bias or prejudice must be strong enough to overcome the presumption of his integrity.'"  *Id.* at ¶ 16, quoting 48A C.J.S., Judges, § 108, at 731 (1981).  "A determination of whether a judge is biased or prejudiced is based on the judge's words and/or actions and whether those words and/or actions convey that the judge is predisposed to an outcome of a case."  *Berhalter* at ¶ 28.

{¶ 17} "A judge's subjective bias, however, is not easy to discern.  The United States Supreme Court has recognized that '[t]o establish an enforceable and

workable framework, the Court's precedents [also] apply an objective standard that, in the usual case, avoids having to determine whether actual bias is present.'" (Bracketed text in original.) *In re Disqualification of Clark*, 2023-Ohio-4774, ¶ 47, quoting *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016). Under an objective standard, "[t]he question is '"whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case."'" *United States v. Melton*, 738 F.3d 903, 905 (8th Cir. 2013), quoting *Moran v. Clarke*, 296 F.3d 638, 648 (8th Cir. 2002), quoting *In re Kansas Pub. Emps. Retirement Sys.*, 85 F.3d 1353, 1358 (8th Cir. 1996). "'[T]hese outside observers are less inclined to credit judges' impartiality and mental discipline than the judiciary itself will be.'" *In re Nettles*, 394 F.3d 1001, 1002 (7th Cir. 2005), quoting *In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990).

## Analysis

{¶ 18} Because the allegations rely on the same evidence, they are addressed together.

{¶ 19} As an initial matter, this is the third affidavit of disqualification Croskery has filed against Judge Triggs. A successive affidavit of disqualification may not be used to reargue points that were unsuccessfully made in a prior affidavit of disqualification. *Clark*, 2023-Ohio-4774, at ¶ 45. But here, Croskery is not merely repeating prior allegations and evidence to try a third time to disqualify Judge Triggs. Rather, he "builds on them as evidence of a pattern of conduct that shows bias," *id.*

{¶ 20} In support of his allegations, Croskery points to the judge's failure to follow a superior court's mandate and the judge's trial errors. Generally, an affidavit of disqualification is not the proper mechanism for determining whether a trial judge's decision complies with an appellate court's order, *In re Disqualification of Saffold*, 2019-Ohio-3838, ¶ 4, or whether a judge has committed a trial error, *see In re Disqualification of Schooley*, 2023-Ohio-4332, ¶ 24.

**{¶ 21}** But although it is the general rule that "[a] judge may continue presiding over a case when the judge's rulings of law are reversed on appeal, even in a critical opinion issued by the court of appeals," *Clark* at ¶ 51, citing *In re Disqualification of Floyd*, 2012-Ohio-6336, ¶ 10, "[j]udges have been removed from cases for refusing to comply with mandates from higher courts," *In re Disqualification of Carr*, 2018-Ohio-5260, ¶ 6.

**{¶ 22}** Here, the First District determined that Judge Triggs's grant of summary judgment was erroneous because there were genuine issues of material fact regarding whether Cintrifuse breached the lease. Yet on remand, without the presentation of any additional evidence and relying only on opening statements, Judge Triggs directed a verdict.

**{¶ 23}** Importantly, the standards for granting a summary judgment and for directing a verdict are "very close," and "most courts treat the two standards identically." *Bill Johnson's Restaurants, Inc. v. Natl. Labor Relations Bd.*, 461 U.S. 731, 745, fn. 11 (1983). Indeed,

> "'[t]he primary difference between the two motions is procedural; summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted.' . . . In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

(Ellipsis in original.) *Grau v. Kleinschmidt*, 31 Ohio St.3d 84, 91 (1987), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986), quoting *Bill Johnson's Restaurants* at 745, fn. 11.

{¶ 24} In granting a directed verdict, Judge Triggs disregarded the court of appeals' holding that there were triable issues for the jury. He also failed to adhere to the standard for granting a directed verdict in the first place because he did not direct a verdict based on the evidence admitted at trial—he decided to direct a verdict after opening statements. In doing that, he denied Panino and Loreto the opportunity to present their evidence before granting a judgment against them. At the same time, the evidence reveals that Judge Triggs came close to crossing—if he did not cross—the line separating his proper role as a neutral arbiter from the improper role of an advocate when he suggested that Cintrifuse file a motion for a directed verdict and when he questioned Croskery aggressively on the merits of that motion while opposing counsel stood by.

{¶ 25} Judge Triggs did not just disregard a higher court's mandate and commit a serious error of law. He also sanctioned Croskery and his clients and awarded Cintrifuse more than $40,000 in attorney fees. According to the order granting the motion for sanctions, Judge Triggs found that Croskery's "request that the Court disqualify itself from future proceedings in [the] matter was done for the improper purpose of 'delay' as is contemplated in Civ.R. 11 [and] constitute[d] frivolous conduct under R.C. 2323.51." But on the record, the judge contradicted that statement and said that it was the filing of the original affidavit of disqualification that constituted frivolous conduct. Importantly, "attorneys have a right to file an affidavit of disqualification challenging a court's perceived partiality "'without the court misconstruing such a challenge as an assault on the integrity of the court."'" *In re Disqualification of Knece*, 2014-Ohio-1414, ¶ 10, quoting *Disciplinary Counsel v. Shimko*, 2012-Ohio-5694, ¶ 32, quoting *United States v. Brown*, 72 F.3d 25, 29 (5th Cir. 1995).

{¶ 26} When the second affidavit of disqualification was denied, the chief justice did not have the benefit of the court of appeals' decision reversing the sanctions award. In its opinion, the court of appeals determined that there was *no*

*evidence* that Croskery had acted for the purpose of causing unnecessary delay. *Cintrifuse Landlord*, 2024-Ohio-5289, at ¶ 33 (1st Dist.). Consequently, the court concluded that the trial court *abused its discretion*—i.e., Judge Triggs acted unreasonably, arbitrarily, or unconscionably—in awarding sanctions to Cintrifuse. *Id.*; *see also id.* at ¶ 25.

{¶ 27} Although adverse rulings generally do not require the disqualification of a judge, "'a judge could be disqualified if his or her adverse rulings were accompanied by words or conduct that call into question the manner in which the proceedings are being conducted.'" *Clark*, 2023-Ohio-4774, at ¶ 51, quoting *Knece* at ¶ 10. And in addition to ignoring the mandate of a higher court and committing legal errors that have led the judge to be reversed twice—and potentially a third time on appeal of the directed verdict—Judge Triggs does not deny telling Croskery, "I don't like you."

{¶ 28} "The law requires not only an impartial judge but also one who appears to the parties and the public to be impartial." *In re Disqualification of Corrigan*, 2005-Ohio-7153, ¶ 11. Therefore, Croskery's allegations have merit. To allay any concerns about the fairness and integrity of the proceedings and to ensure to the parties and the public the unquestioned neutrality of the trial judge, Judge Triggs is disqualified from presiding over the underlying case.

### Conclusion

{¶ 29} For these reasons, and out of an abundance of caution, the affidavit of disqualification is granted. The administrative judge of the Hamilton County Court of Common Pleas, General Division, shall randomly reassign the case to another judge of the division in accordance with Sup.R. 36.019(A).

———————————